Darrell L. Fun
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **Criminal No. 10-CR-329-F** |
| **ROBERT VELASQUEZ, et al.,** ) | |
| ) | |
| Defendants. ) | |

### GOVERNMENT'S MOTION IN LIMINE CONCERNING ANTICIPATED REFERENCE TO COOPERATING WITNESSES IN A DEROGATORY AND ABUSE MANNER

The United States of America ("United States" or "Government"), by and through Darrell L. Fun, Assistant United States Attorney for the District of Wyoming, hereby submits this Motion in Limine requesting that the Court enter an order precluding the Defendants Robert Velasquez, Miguel Angel Ordaz, Danny Hernandez, Daniel George Renteria, Alex Garcia, Jr., Kimberly Perkins and John Morgan from referring to cooperating witnesses in a pejorative, inflammatory, abusive or harassing manner.  Specifically, the Defendant should be prevented from referring to cooperating witnesses, during direct or cross examination, as a: rat, snitch, narc, fink, double-crosser, stool pigeon, squealer, stoolie, turncoat, weasel, tattle-tale, traitor, backstabber, or similar characterizations as improper character evidence pursuant to Rule 404(a)(3) and 405, improper impeachment pursuant to Rule 608 and 609, and improper examination pursuant to Rule 611.  Further, such characterizations

would violated Wyoming Rules of Professional Conduct for Attorneys, Rule 4.4(a) and Rule 3.5(d).

## I. INTRODUCTION

The Defendants in this case are all charged with conspiracy to possess with intent to distribute, and to distribute methamphetamine. Some of the same Defendants are charged with possession with intent to distribute methamphetamine, possession of firearms in furtherance of a drug trafficking crime and possession of a machine gun. It is anticipated that the during the course of the trial, the defense will attempt to refer to and address cooperating witnesses using improper characterizations, such as rat, snitch, narc, fink, double-crosser, stool pigeon, squealer, stoolie, turncoat, weasel, tattle-tale, traitor, backstabber, or similar terms.[1] Defense counsel has already, during pretrial motions, referred to potential government witnesses as "snitches" and "snitch testimony." As a result, the defense should be prohibited from using such pejorative, inflammatory, abusive or harassing terms when referring to cooperating witnesses or when examining witnesses on direct or cross.

While cases dealing with the improper use of inflammatory language at trial generally involve prosecutorial misconduct, courts have, however, stated that prosecutors and defense attorneys should be held to the same standards of conduct - defense attorneys, like prosecutors, are not "permitted to make inflammatory or unfounded remarks." *State v. Bennefield*, 567 A.2d 863, 867 (Del. 1989) (*citing U.S. v. Young*, 470 U.S. 1, 8-9 (1985)). In *Young*, the Supreme Court noted that the ABA Standing Committee on Standards for Criminal Justice established "rules of trial conduct for counsel that quite properly hold all advocates to essentially the same standards." *Young*, 470 U.S. at 9. The

---

[1] For purposes of brevity, the term "snitch" will be used but it is meant to include and refer to the various other terms often used when describing a cooperating witness in a pejorative manner such as rat, narc, fink, double-crosser, stool pigeon, squealer, stoolie, turncoat, weasel, tattle-tale, traitor, backstabber, etc.

Court also noted the reason for the absence of case law involving misconduct by defense counsel: while prosecutorial conduct is often reviewed on appeal, no such review of a defense attorney's conduct occurs after an acquittal. *Id.* at n. 6.

## II.  ARGUMENT

Rule 404(a)(3) provides that evidence of person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except evidence of the character of a witness as provided in Rule 607, 608 and 609. In this case, the use of pejorative terms when referring to a witness has no purpose other than to unduly harass the witness and inflame and confuse the jury. Cross-examination of a witness is limited to the subject matter of the direct examination and to matters affecting the witnesses credibility. Rule 611. However, using abuse terms when referring to a witness is not relevant to the witnesses' credibility, particularly when there are other more appropriate and less inflammatory terms.

The Tenth Circuit held that derogatory characterizations of witnesses are improper in an unpublished opinion, *U.S. v. Wade*, 203 F. App'x 920 (10th Cir. 2006). In *Wade*, the court considered a situation in which a prosecutor, in his closing argument, referred to the defendant's accountant— a government witness — as "that old stock fraud artist" who was "in big trouble." *Id.* at 925, 934-935. The witness in question had, in fact, been previously convicted of felony securities fraud. *Id.* at 934-935. The court determined that the attorney's references, though not enough to warrant reversal, were nonetheless improper. *Id.* at 934. The court observed that the defendant "was understandably concerned that [the business relationship between the witness and himself] could have affected the jury's perception of him." *Id.*

By analogy, since referring to a witness who had been convicted of felony securities fraud as a "stock fraud artist" was improper, like in *Wade*, then referring to witness as a "snitch" would

similarly be improper. This is not because reference is being made to the witnesses conviction, which would be proper Rule 609 evidence, but that pejorative characterization "stock fraud artist." Likewise, in the instant case, referring to a cooperating witness as a "snitch" would be equally improper - the impropriety would not be indicating to the jury that the witness in question is cooperating but using the pejorative characterization of "snitch." Clearly, "personal attacks by an [attorney] are improper." *Le v. Mullin*, 311 F.3d 1002, 1021 (10th Cir. 2002) (reference to the defendant as "a small man in stature [who's] cold as an icicle" and "very special" in his lack of remorse, while "cold as an icicle" and "very special" fairly described the evidence, inappropriately referred to his physical appearance) (*citing Darden v. Wainwright*, 477 U.S. 168, 180-181 (1986); *Childress v. Oklahoma*, 1 P.3d 1006, 1014 (Okla. Crim. App. 2000) (declaring that the prosecutor comparing the defendant to "a cornered rat," while not grounds for reversal, was nonetheless a borderline argument not condoned by the court).

*Le* and the Tenth Circuit's endorsement of *Childress* establish the general principle that a an attorney may not use derogatory language to characterize a defendant. Many non-Tenth Circuit cases, discussed below, apply this same reasoning to derogatory characterizations of witnesses. *E.g. Gore v. State*, 719 So.2d 1197, 1201 (Fla. 1998) (stating that "it is clearly improper for the prosecutor to engage in vituperative or pejorative characterizations of a defendant or witness").

In this case, when the defense characterizes a cooperating witness as a "snitch" it is not based on the evidence but merely using a pejorative characterization of a witness. Instead of revealing what the witness did or did not do, use of the derogatory term of "snitch" isn't describing the fact that the witness cooperated, but that they are less than human. S*ee Gore v. State*, 719 So.2d 1197, 1201 (Fla. 1998) ("it is clearly improper for the prosecutor to engage in vituperative or pejorative characterizations of a defendant or witness" such as referring to someone as not being a "human

being").

In *State v. Bennefield*, 567 A.2d 863, 865 (Del. 1989), the Delaware Supreme Court, in response to a certified question, considered whether a defense attorney, in his closing argument, improperly described various state witnesses as "drug users," "slime," "felons," "admitted liars and scoundrels," and "snakes." The court stated a general rule that "[c]ounsel's characterizations and use of descriptive terms are not impermissible to the extent they are based upon and supported by the record and fair inferences therefrom." *Id.* at 867. The court noted that several of the witnesses in question had admitted to testifying untruthfully, using or selling drugs, or having felony records. *Id.* The court determined, therefore, that the defense attorney did not act improperly by describing the witnesses as "liars," "drug addicts," and "felons." *Id.* However, "assertions which appeal to a jury's passions and prejudices rather than appealing to reasoned responses are improper tools for deciding a case." *Id.* In this regard, *Bennefield* held that the defense attorney's use of the terms "scoundrel," "slime" and "scum," and referring to the witnesses as "snakes," was improper and prejudicial. *Id.* The court emphasized the principle that defense attorneys are not permitted to make inflammatory or unfounded statements. *Id. See also People v. Pensinger*, 805 P.2d 899, 919 (Cal. 1991) ("[a] prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, *as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury*."). Similarly, allowing the defense to call a cooperating witness a "snitch," "rat" or the like, is analogous to the negative connotations that the terms "snake," "slime," "scum" or "scoundrel" were found to be improper in *Bennefield* .

Clearly, it is improper for a prosecutor to refer to the defendant in an inflammatory manner, references to a defendant are improper. *See, e.g., State v. McCarthy*, 939 A.2d 1195, 1216-1217 (Conn. App. 2008) (characterizing three witnesses as "bums" during closing argument was pejorative

and disrespectful as was characterizing the private investigators as "jokers"); *State v. Diaz*, 668 P.2d 326, 330 (N.M. App. 1983) (calling a defendant "stupid," a "yo yo," a "thief," and a "crook" was improper as inflaming the jury); *State v. Sheika*, 766 A.2d 1151, 1154, 1163 (N.J. Super. A.D. 2001) (referring to the defendant and his alleged accomplice as "thugs" during direct examination of a witness was derogatory name-calling); *Perez v. State*, 689 So.2d 306, 307 (Fla. App. 3 Dist. 1997) (referring to the defendants and one defense witness as racists was reversible error); and *Kellogg v. Skon*, 176 F.3d 447, 451-452 (8th Cir. 1999) (referring to the defendant as a "sexual deviant" and a "monster" during closing argument was improper). Although an attorney may argue the evidence and inferences before the jury," he "may not heap verbal abuse on a witness nor characterize a witness as a perjurer or a fraud." *Yates v. State*, 734 P.2d 1252, 1255-56 (Nev. 1987). Similarly, the defense should refrain from characterizing or referring to cooperating witnesses using derogatory, pejorative, harassing or inflammatory terms. And, while it may be difficult to distinguish proper from improper arguments, "repeated personal attacks on the [witness can go] so far beyond accepted limits as to constitute obvious error." *People v. McBride*, 228 P.3d 216, 221-23 (Colo. App. 2009) (characterizing expert witness as a "hired gun" who was "full of it" and called the witness' testimony "garbage" was improper).

      Finally, it should be noted that the Wyoming Rules of Professional Conduct for Attorneys further addresses this issue, specifically, Rule 4.4(a), which states: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Moreover, Rule 3.5(d) states that an attorney shall not "engage in conduct intended to disrupt a tribunal." Clearly, referring to a cooperating witness using terms such as "snitch" or similar terms, has no other purpose than to embarrass and harass the witness and is the type of conduct that would

disrupt the orderly and efficient presentation of evidence.

## III. CONCLUSION

As a result, the government's motion in limine precluding the defense from referring to a cooperating witness as a rat, snitch, narc, fink, double-crosser, stool pigeon, squealer, stoolie, turncoat, weasel, tattle-tale, traitor, backstabber, or similar characterizations should be granted, Such characterizations are not fair and proper argument, would not be rationally based upon the evidence and have no purpose other than to harass, embarrass and inflame the jury. Further, the use of such terminology would not be proper character evidence pursuant to Rule 404(a)(3) and 405, or proper impeachment pursuant to Rule 608 and 609; and the court can impose limits to examination pursuant to Rule 611. Further, such characterizations violate Wyoming Rules of Professional Conduct for Attorneys, Rule 4.4(a) and Rule 3.5(d).

Dated this 6th day of June, 2011.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney

By: _____
DARRELL L. FUN
Assistant United States Attorney