Darrell L. Fun
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Criminal No. 10-CR-329-F** |
| **ROBERT VELASQUEZ, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS VELASQUEZ, RENTERIA, ORDAZ AND GARCIA'S MOTIONS FOR JUDGEMENT OF ACQUITTAL

COMES NOW the United States, by and through its attorney, Darrell L. Fun, Assistant United States Attorney for the District of Wyoming, and files the following consolidated response to Defendants Ordaz, Garcia, Renteria and Velasquez's motions for post-jury verdict for a judgement of acquittal. Each cite different reasons but generally contend that the evidence was insufficient to sustain the convictions upon which the jury returned a verdict of guilty. The Defendants' arguments and motions, as discussed separately below, are without merit and should be denied.

## THE LEGAL STANDARD

In reviewing a challenge to the sufficiency of the evidence, the Tenth Circuit follows a well-established test:

> [T]he evidence both direct and circumstantial, together with reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

*United States v. Sanders,* 928 F.2d 940, 944 (10th Cir.) (internal quotations and citations omitted), *cert. denied,* 502 U.S. 845 (1991).  "A jury may-and often must-consider circumstantial evidence in determining whether the Government has established the elements of [an]...offense.  In considering whether the evidence is sufficient to support the jury's verdict, [the court] must remain mindful that circumstantial evidence is entitled to the same weight as direct evidence. To sustain a criminal conviction, the Government's evidence must be substantial or raise more than a mere suspicion of guilt, but it need not disprove every other reasonable theory of the case."  *United States v. Winder,* 557 F.3d 1129, 1137-78 (10th Cir.) (internal quotations and citations omitted), *cert. denied,* --- U.S. ----, 129 S. Ct. 2881 (2009).   The evidence is considered in its totality, not in isolation, and the government need not negate every possible theory of innocence.  *See United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir.1993).

This standard imposes a heavy burden on the defendant, whose conviction must be affirmed if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Hutchinson,* 573 F.3d 1011,

1033 (10th Cir.2009) ("we do not weigh evidence or credibility; we ask instead only whether the government's evidence, credited as true, suffices to establish the elements of the crime.").   In conducting this review, the court is not to "weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." *United States v. King,* 632 F.3d 646, 650 (10th Cir.2011) (further quotation omitted).   It is presumed that "the jury's findings in evaluating the credibility of each witness are correct." *United States v. Evans,* 318 F.3d 1011, 1018 (10th Cir.2003) (quotation and citation omitted).

## **DISCUSSION**

Defendant Ordaz

Defendant Ordaz, essentially reiterating defense counsel's closing argument, contends that he was denied due process because the government tampered with or "spiked" one of the two bags of drugs that were found in his residence.  Although Defendant Ordaz does not refer to Rule 29(c) of the Federal Rules of Criminal Procedure in his motion, for purposes of this response, it is assumed the Defendant is seeking to have the jury's finding of guilt set aside pursuant to Rule 29(c).

Defendant Ordaz does not argue that there was insufficient evidence to convict him of the drug conspiracy only that, according to his theory of the defense, one of the bags of drugs tested among the two that were found in the Defendant's residence was not methamphetamine and the forensic chemist, not following proper procedure, "spiked" the sample to obtain a positive test result. As such, since Count 13 (possession of a firearms in furtherance of a drug trafficking crime)

references Count 1 (drug conspiracy), the only firearm count affected by Defendant Ordaz's defense theory is Count 12.

In this case, even assuming there was conflicting testimony between the government's forensic chemist and Defendant Ordaz's chemist, it is presumed that "the jury's findings in evaluating the credibility of each witness are correct." *Evans,* 318 F.3d at 1018.  The jury's verdict, in fact, reveals that it found the testimony of the government's forensic chemist to be more credible, a finding to which the court should defer.  *See United States v. Jameson,* 478 F.3d 1204, 1210 (10th Cir.2007). Furthermore, Defendant Ordaz's own chemist, Mr. Starbuck, testified on cross-examination that there was no evidence that methamphetamine was added to the sample and that the sample in fact contained methamphetamine.  Mr. Starbuck also testified that he has no familiarity with street drugs, has never even seen street drugs and has never tested methamphetamine mixed with MSM or a cutting agent; and that since methamphetamine and MSM are not homogenous that this could account for differences in the test results.  Thus, there was ample evidence supporting the jury's verdict with regards to Count 11 (possession of methamphetamine with intent to distribute), particularly in view of the deference given to the jury's verdict - "any rational trier of fact could have found [Defendant Odaz] guilty of the crime beyond a reasonable doubt."  *United States v. Wood,* 207 F.3d 1222, 1228 (10th Cir. 2000).

To the extent that Count 12 (possession of a firearms in furtherance of a drug trafficking crime) is tied to Count 11, as Defendant Ordaz alleges, a rational jury could also find Defendant Ordaz guilty beyond a reasonable doubt of this offense as well.  This is clearly so when Defendant

Ordaz does not contest he also possessed digital scales, which are commonly used to weigh drugs and had methamphetamine residue on them, and that he possessed a second bag containing 34.195 grams of methamphetamine in his residence with the loaded firearms.  Cases recognize that certain items are commonly regarded as tools of the drug trade, such as various guns (including a fully automatic firearm), ammunition and scales. *See, e.g.*, *United States v. Burkley,* 513 F.3d 1183, 1189 (10th Cir.2008) (noting that firearms, scales, and large sums of cash are tools of the drug trade); *United States v. Triana,* 477 F.3d 1189, 1195 (10th Cir.2007) (describing scales, glass pipes, and plastic baggies as "tools of the drug trade"); *United States v. Hall,* 473 F.3d 1295, 1304 (10th Cir.2007) (listing firearms, large sums of cash, scales, and uncharged quantities of illegal drugs as tools of the drug trade); *United States v. Verners,* 53 F.3d 291, 297 (10th Cir.1995) (regarding laboratory equipment, scales, guns, ammunition, packaging materials, and profits as tools of the drug trade).

Substantial evidence in this case supports the conclusion that Defendant possessed the guns in furtherance of a predicate drug trafficking offense. At the very least, Defendant's ready access to the guns and their "proximity" to the drugs in the residence demonstrated that Defendant intended the firearms to be "available for use in the offense." *Burkley,* 513 F.3d at 1190.  Firearms are, after all, often used by drug dealers to protect merchandise and cash, as well as to intimidate prospective purchasers. *See id.*  Further, the prominent display of a photograph with Defendant Ordaz and others proudly holding some of the same firearms, and the fact that the pistols were loaded, the fact that the none of the firearms were securely stored but were available for easy access, the fact that some of the firearms were on open display in the residence, and the fact that he possessed an unregistered machine

gun are all strong evidence of Defendant's possession of firearms to deter interference with his drug dealing pursuits and intimidate those he dealt with.

Finally, even if the jury had believed Defendant Ordaz's theory that the government "spiked" the 62.950 gram bag of methamphetamine he would still have been convicted of Count 12 since Defendant Ordaz still possessed 34.195 grams of methamphetamine with intent to distribute. Because the success of Defendant Ordaz's motion depends upon the success of a tandem attack on the sufficiency of the evidence with regards to Count 11, his attack on Count 12 also fails.

Taking the evidence - both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in the light most favorable to the government, a reasonable jury would find the defendant guilty beyond a reasonable doubt. *King,* 632 F.3d at 650. As a result, Defendant Ordaz's motion for acquittal should be denied.

Defendant Velasquez

Defendant Velasquez argues that there was insufficient evidence with regards to Counts 5 and 6, possession of a firearm in furtherance of a drug trafficking crime. In particular, Defendant Velasquez contends that there insufficient details about the make, model, caliber and type of firearm in order to convict him of Count 5. These arguments are without merit since there is none of the elements of a § 924(c) conviction require the government to prove that a defendant possessed a specific type, make, model and caliber of a firearm. *See United States v. Cornelio-Legarda*, 381 Fed.Appx. 835, 842 (10th Cir. 2010) (unpublished) (testimony that defendant threatened witness with

shotgun, even though defendant was not later found in possession of any shotgun, was sufficient to sustain a conviction for being an unlawful user of drugs and a felon in possession of a firearm); *United States v. Smith*, 182 F.3d 452, 458 (6th Cir. 1999) (even though no guns were found in the defendant's home, witness accounts of defendant possessing firearms sufficient to sustain conviction for felon in possession of firearms). The issue is whether there was sufficient evidence, either direct or circumstantial, or both, that a reasonable jury would find the defendant guilty beyond a reasonable doubt.

In this case, with regards to Count 5, Defendant Velasquez does not contend that there was insufficient evidence to convict him of the underlying drug conspiracy in Count 1. Instead, he contends that there was insufficient evidence that he possessed a firearm. However, given that a jury found the witnesses accounts of seeing Defendant Velasquez with firearms during the course of the conspiracy, there is sufficient evidence. In fact, there was direct evidence that Defendant Velasquez possessed firearms in furtherance of a predicate drug trafficking offense, namely, the testimony of Amber Bear, Candice Kyser and Celia Downes, who all testified about Defendant Velasquez having guns during the course of the conspiracy. Amber Bear testified about Defendant Velasquez staying at her house and pointing a gun at her, saying that he would kill her if she didn't do as he said, namely, distribute his methamphetamine. Ms. Bear testified that it was a semi-automatic handgun that was black and silver in color. Similarly, Celia Downes testified that when Defendant Velasquez came to her house to collect a drug money and distribute more drugs to her, she saw him get up from her couch with the black handle of a semi-automatic pistol tucked in the back of his pants. In

addition, Candice Kyser testified about "Noe", Defendant Renteria, telling her about when "Grouch", Defendant Velasquez, and "Noe" pulled guns on each other at the house in Cody. John Morgan corroborate this, testifying that both "Noe" and Robert Velasquez told him that they both grabbed guns over an argument about a drug debt. Melissa Morgan also testified that she was present and saw Defendant Velasquez and Defendant Renteria pull guns on each other and they were arguing about a drug debt.

There are several cases in other circuits where convictions for § 924(c) counts have been sustained even though no firearm was recovered. *E.g.*, *United States v. Jeffers,* 570 F.3d 557, 565-66 (4th Cir. 2009) (evidence sufficient for § 924(c) conviction where no firearms or drugs were seized from the defendant, let alone together - testimony showed that the defendant possessed various firearms at different points during the time he participated in the conspiracy and also showed that the defendant was willing to use a firearm in self-defense should it become necessary); *United States v. Beverly*, 99 F.3d 570 (3rd Cir. 1996) (§ 924(c) conviction sustained even though the only evidence that defendant possessed firearm during robbery was testimony of witness that he was threatened with a chrome-plated revolver and no gun was produced at trial); *United States v. Kirvan,* 997 F.2d 963 (1st Cir.1993) (eyewitness testimony that defendant had a large handgun that was shiny and silver in color was sufficient to sustain a § 924(c) conviction where the gun was not recovered)*; see also United States v. Taylor,* 54 F.3d 967, 975 (1st Cir.1995) (holding that lay opinion testimony from three eyewitnesses to a bank robbery, each of whom observed the object gripped by the defendant at close range was sufficient to sustain a finding that the object was a real gun). Thus, the jury's verdict

in view of the testimony of three witnesses can hardly be considered irrational.  The jurors could have reasonably found that eyewitness testimony was credible and that the object they saw was, in fact, a firearm.  They could have further accepted the inference that Defendant Velasquez disposed of or hid the gun, which explained why it was not located.

Defendant Velasquez also argues that there was insufficient evidence to convict him of Count 5 because no details were provided about the exact time or date of his possession of a firearm.  However, the underlying offense to this § 924(c) is a drug conspiracy.  *See United States v. Brown,* 400 F.3d 1242, 1249-50 (10th Cir.2005) (holding that where defendant was engaged in a continuing and ongoing methamphetamine manufacturing operation, the question before the court was "whether the firearm was sufficiently connected to the 'continuing offense' as a whole").  The jury in this case was entitled to conclude that Defendant Velasquez possessed firearms various times during the course conspiracy to protect his drug trafficking business.  *United States v. Williams,* 923 F.2d 1397, 1403 (10th Cir.1990) ("[T]he firearms were entwined with the drug operation. The success of such a retail distribution operation is predicated upon a steady flow of customers making purchases. The visible presence of firearms is a means of ensuring that none of these customers attempts a robbery.").  Furthermore, when an indictment charges a defendant with committing a crime "on or about" a specific date, the Government must simply provide evidence to establish the offense was committed "on a date reasonably near to the specified date alleged in the indictment."  *United States v. Charley,* 189 F.3d 1251, 1273 (10th Cir.1999) (quotation omitted).  There is no requirement to prove the exact date and time.

With regards to the Defendant Velasquez's contention of insufficient evidence with regards to Count 6, which is tied to Count 3 (distribution of methamphetamine), the same issues are not presented since the firearm, a SKS semi-automatic rifle (Exhibit 200 and 200-A), was in fact recovered.   Further, Juan Marquez testified to seeing Defendant Velasquez with the SKS semi-automatic firearm, which Defendant Velasquez showed him was loaded, during the course of purchasing methamphetamine from Defendant Velasquez on January 21, 2010. Mr. Marquez testified that he felt intimidated by the presence of the firearm.   Finally, John Morgan, from whom this particular firearm was recovered from, testified that he had loaned this firearm to Defendant Velasquez for protection and that Defendant Velasquez kept it at the Cody "shop" house, which is where Juan Marquez seen it.

Defendant Garcia

Defendant Garcia asserts that a finding of not guilty as to Count 1, the drug conspiracy, necessarily negates the negates a finding of guilty as to Count 2, conspiracy to launder money. Defendant Garcia, however, misunderstands the difference between a drug conspiracy and a money laundering conspiracy, which is that a drug conspiracy contains different elements and a completely different objective then a money laundering conspiracy.

Conspiracy to launder money requires proof "(1) that there was an agreement between two or more persons **to commit money laundering** and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Wittig,* 575

-10-

F.3d 1085, 1103 (10th Cir.2009) (further citation omitted) (emphasis added).  To establish the crime of money laundering under § 1956(a)(1)(A)(I) requires proof that the defendant "1) conducted or attempted to conduct a financial transaction, 2) which the defendant then knew involved the proceeds of unlawful activity, 3) with the intent to promote or further unlawful activity.  *United States v. Torres,* 53 F.3d 1129, 1136 (10th Cir.1995).  A drug conspiracy, on the other hand, requires proof that two or more persons, knowing the essential objective of the conspiracy, agreed to violate the Controlled Substance Act.  *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992) ("It is necessary to show that the "defendant shared a common purpose or design with his alleged coconspirators."), citing *United States v. Horn,* 946 F.2d 738, 741 (10th Cir. 1991) (objective of conspiracy was "to distribute large amounts of cocaine for profit") and *United States v. Dickey,* 736 F.2d 571, 582 (10th Cir. 1984) (objective of conspiracy was "to possess and distribute drugs (marijuana and cocaine) for profit").

In this case, the objective of the conspiracy was to launder money, that is, to conduct a financial transaction which involved the proceeds of unlawful activity (drug distribution) with the intent to promote or further the unlawful activity.  There was overwhelming evidence presented with regards to the money-laundering conspiracy: (1) MoneyGram wire-transfer records; (2) testimony and driver's license records showing that Defendant Garcia received wire transfers; (3) testimony from Melissa Morgan that she wired money directly to Defendant Garcia and his girlfriend, Lynette Cardenas, to pay for drugs and to obtain more drugs, which co-conspirators later received; (4)

evidence that other co-conspirators (*e.g.*, Raymundo Correa, William Esquivel (aka Defendant Renteria), Miguel Ordaz and Robert Velasquez) utilized money transfers to Fresno to pay for drugs and obtain more drugs; and (5) testimony that an ounce of methamphetamine cost the same amount of money that was being sent to Defendant Garcia each time.  *See United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011); *see also Torres,* 53 F.3d at 1137 n. 6 (finding that using proceeds from the sale of drugs to buy more drugs "satis[ied] the 'promotion' element of 1956(a)(1)(A)(I)"); *United States v. King,* 169 F.3d 1035, 1039 (6th Cir.1999) ("Payment for drugs may constitute 'promotion' for the purposes of the money laundering statute when such payment encourages further drug transactions."); *United States v. Baker,* 63 F.3d 1478, 1494 (9th Cir.1995) (stating that payments to a contraband cigarette supplier was laundering which promoted the carrying on of the unlawful activity because the defendant "could not have continued the illegal trafficking without paying his cigarette suppliers"); *United States v. Skinner,* 946 F.2d 176, 177–78 (2d Cir.1991) (affirming conviction under § 1956(a)(1)(A)(I) where defendant paid drug suppliers with proceeds from fronted drugs).

Defendant Garcia, citing no cases, contends that a not guilty verdict on a drug conspiracy is inconsistent with and does not support a guilty verdict on a money laundering conspiracy.  While there does not appear to be any Tenth Circuit opinions addressing this issue, the Ninth Circuit in *United States v. Arlt*, 252 F.3d 1032 (9th Cir. 2001), addressed a similar issue in the context of the Double Jeopardy Clause.  In *Arlt*, the defendant claimed that the Double Jeopardy Clause was violated

when he was sentenced after being convicted of conspiracy to manufacture methamphetamine under 21 U.S.C. § 846 and for conspiracy to commit an offense against United States, specifically laundering money under 18 U.S.C. § 1956(a)(1).  The Ninth Circuit, applying the *Blockburger* test, held that the Double Jeopardy Clause did not bar defendant's conviction for conspiracy to manufacture methamphetamine and for conspiracy to laundering money even though same basic conduct formed basis for both charges because a drug conspiracy did not necessarily involve the unlawful use of money, and money laundering did not necessarily involve unlawful drug transactions. *Id.*, at 1039.

Similarly, in this case, the jury, for whatever reason found Defendant Garcia not guilty of the drug conspiracy but guilty of money laundering.  The fact that Defendant Garcia was found not guilty of a drug conspiracy has no effect on jury's finding of guilt on the conspiracy to launder money. *United States v. Powell*, 469 U.S. 57, 68 (1984) (defendant's argument that an acquitted on a drug conspiracy but a conviction on telephone counts facilitating a drug conspiracy is inconsistent and, therefore, necessitates a finding of insufficient evidence as to the convicted Count simply misapprehends the nature of inconsistent verdicts, which may have been the result of mistake, compromise or lenity and not due to insufficient evidence).  Furthermore, this is not in inconsistent result since the elements for a drug conspiracy and a conspiracy to launder money are mutually exclusive and contain different elements.  As stated in *Arlt*:

> Perhaps the simplest explanation, even for lawyers and judges, is that a drug
> conspiracy need not (although it almost always will) involve the unlawful use of

money, and money laundering need not (although it sometimes will) involve unlawful drug transactions.

252 F.3d at 1039. Even though there may be some factual overlap between a drug conspiracy and a money laundering conspiracy, it does not follow that the two conspiracies cover the same offense. *Id*. "Rather, it merely shows that, in *some* instances, the same conduct satisfies the elements of both offenses" and " 'substantial overlap' between the two crimes does not preclude them from being separate offenses." *Id.*, citing *Iannelli v. United States,* 420 U.S. 770, 785 n. 17 (1975) and *United States v. Dixon,* 509 U.S. 688, 703-04 (1993). Thus, the fact that the jury found Defendant Garcia guilty of laundering money and not guilty of a drug conspiracy is of little consequence and does not, as Defendant Garcia argues, necessitate acquittal on the money laundering conspiracy.

Defendant Renteria

Defendant Renteria contends that there was insufficient evidence for any rational jury to convict him of Count 1, the drug conspiracy. This argument is also without merit.

There was overwhelming evidence, both direct and circumstantial, presented of Defendant Renteria's intimate involvement and participation in the drug conspiracy. Eyewitnesses testified that they were involved with getting methamphetamine for Defendant Renteria from Fresno, distributing methamphetamine obtained from the Defendant, paying him for methamphetamine and getting methamphetamine from Defendant Renteria.

Specifically, Kimberly Perkins testified about Defendant Renteria asking her about a way to get methamphetamine shipped to them from Fresno and that Ms. Perkins discussed with Defendant Renteria that the best way was to have it shipped via UPS overnight delivery.   Defendant Renteria agreed to pay Ms. Perkins $250 for each package of drugs that she received for him.   Thereafter, Ms. Perkins further testified about getting weekly shipments of packages from Fresno, which she gave to Defendant Renteria during her lunch breaks and for which she was paid $250 for each package.   Ms. Perkins further testified that she learned that the package contained methamphetamine as she had lost a package and even though it was later found and given to Defendant Renteria, he beat her for losing it.   She also testified about later seeing the methamphetamine hidden in a candle when Defendant Ordaz open one of the packages at her kitchen table.

In addition to Ms. Perkins, Jason Lyles testified about getting methamphetamine from Defendant Renteria on the "front", selling it and then paying Defendant Renteria with Mr. Lyles getting more methamphetamine to sell.   Melissa Morgan testified about going to Sheridan with co-conspirator Velasquez where methamphetamine was obtained from Defendant Renteria that had been sent to a girl name "Kim" in Fresno.

Both Melissa Morgan and John Morgan testified further about getting methamphetamine from Defendant Renteria after Robert Velasquez went to jail.   Candice Kyser also testified about Defendant Renteria's involvement with selling drugs to Jason Lyles.   Ms. Kyser, as corroborated by Ms. Morgan, testified about receiving a Grand Prix car since co-conspirator Velasquez owed Defendant Renteria

money for a drug debt.  Danni Fox testified about seeing Defendant Renteria add MSM to methamphetamine, weigh it out and package it into separate bags.

In addition to testimony, there was evidence the Defendant Renteria utilized false names and, using these false names, wired drug money through MoneyGram to other co-conspirators, such as Raymundo Correa, in Fresno in amounts that represented payment for more drugs.  Finally, there were recorded telephone calls between co-conspirator Robert Velasquez, who was in jail, and Defendant Renteria discussing Defendant Renteria providing drugs to John Morgan.

Given this evidence, and other testimony and evidence presented over four weeks, there was more than sufficient evidence, whether direct or circumstantial, proving that Defendant Renteria (1) agreed with another person to violate the drug trafficking laws; (2) had knowledge of the essential objectives of the conspiracy; (3) was knowingly and voluntarily involved in the conspiracy; and (4) that there was interdependence among the alleged conspirators.  *Evans,* 970 F.2d at 668.  Although the government does not have to prove that "the coconspirators know the identities or details of each scheme or have connections with all other members of the conspiracy", *United States v. Edwards,* 69 F.3d 419, 431 (10th Cir.1995), the evidence in this case clearly established Defendant Renteria's direct involvement and participation in the drug conspiracy with key members of the conspiracy.  Not only was there direct eyewitness testimony of Defendant Renteria's participation in the conspiracy to obtain and distribute methamphetamine but the wire transfers and recorded telephone calls easily show that a reasonable jury would find the defendants guilty beyond a reasonable doubt.

## <u>CONCLUSION</u>

As a result, taking the totality of the evidence -both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in the light most favorable to the government, a reasonable jury would find all of the Defendants guilty beyond a reasonable doubt of the offenses for which they were convicted of.   The Defendants' motions, giving due deference to the jury's findings and evaluation of the credibility of each witness, should therefore be denied.

**DATED** this 20th day of November, 2011.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney

By  _____
DARRELL L. FUN
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 20th day of November, 2011, a true and correct copy of the foregoing document was served upon Counsel of Record via CM/ECF or Court's Electronic Filing System.

_____

UNITED STATES ATTORNEY'S OFFICE